IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS REINHART, ET AL. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 10-7384 |
| PNC BANK, NA, ET AL. : | |

<u>MEMORANDUM</u>

**SURRICK, J.**                                                                                                   **APRIL   2nd   , 2012**

      Presently before the Court is Defendant Borough of Ephrata's Motion to Dismiss Plaintiffs' Complaint (ECF No. 4), and Defendants Police Officers Bright, O'Hanlon and Martin's Motion to Dismiss the Complaint (ECF No. 32).  For the following reasons, the Borough of Ephrata's Motion to Dismiss will be granted, and the Police Officers' Motion to Dismiss will be granted in part and denied in part.

**I.      BACKGROUND**

      This action arises out of the repossession of a boat.  Plaintiff Nicholas Reinhart ("Reinhart") is the sole member of Plaintiff Sunset Express Ltd. ("Sunset").  Sunset owns a boat, identified as a 2002 Black Thunder 43 Express, with two 2002 Mercruiser 500HP Gas Motors (the "Boat").  On September 12, 2003, Sunset and Reinhart entered into a Fixed Rate Promissory Note and Security Agreement (the "Note") with National City Bank, predecessor to Defendant PNC Bank, NA ("PNC").  (Note, PNC Ans. ¶ 13 & Ex. A, ECF No. 2.)  As collateral for the Note, Sunset executed a Preferred Ship Mortgage ("Mortgage") dated September 12, 2003 and granted PNC a security interest in the Boat.  (Mortgage, PNC Ans. Ex. B.)

      PNC alleges that on or about January 2010 and at certain times thereafter, Reinhart and

Sunset failed to make monthly payments of the correct sum when due under the terms of the Note. (PNC's Counterclaims ¶ 79, ECF No. 2.)  Believing that Reinhart and Sunset had defaulted on the Note and Mortgage, PNC exercised its right to repossession of the Boat.

On October 15, 2010, PNC, through its repossession agent, National Liquidators, appeared at Plaintiffs' place of business to repossess the Boat. (Am. Compl. ¶ 13, ECF No. 33.)  Reinhart's son, Plaintiff Nicholas Reinhart III ("Reinhart III") was present at Plaintiffs' business at the time National Liquidators showed up to repossess the Boat. (*Id.* at ¶ 15.)  Reinhart III asked National Liquidators to leave the premises four times but National Liquidators did not leave. (*Id.*)  The Boat was behind closed doors. (*Id.* at ¶16.)  Reinhart III physically stood in front of the doors in order to prevent National Liquidators from gaining access to the Boat. (*Id.*)  Because Reinhart III was physically blocking access to the Boat, National Liquidators called the Ephrata Police Department for assistance. (*Id.* at ¶ 17.)  Defendants Borough of Ephrata Police Officers Paula Bright, Sean O'Hanlon and Scott Martin (collectively, "Police Officers") arrived at the scene. (*Id.* at ¶ 18.)  The Police Officers arrived in marked police vehicles, were armed, and were in full police uniform. (*Id***.** at ¶¶ 19-21.)  At least one of the police vehicles had its emergency lights activated. (*Id.* at ¶ 22.)

Plaintiffs allege that the Police Officers ordered Reinhart III to move away from the doors. (*Id.* at ¶ 23.)  Reinhart III felt compelled to comply and removed himself from the access point to the Boat. (*Id.* at ¶¶ 24-25.)  Plaintiffs further allege that "Officer Bright then pushed the first door out of [Reinhart III's] hands and began touching and punching the keypad(s) to activate the entrance doors to Plaintiff's business until she found a button that opened a back door." (*Id.* at ¶ 26.)  One of the Police Officers said to Reinhart III, "I hope I don't get in trouble." (*Id.* at ¶ 27.)

After opening the doors, National Liquidators repossessed the Boat and the trailer on which the Boat was situated. (*Id.* at ¶¶ 30-31.)

## II. PROCEDURAL HISTORY

On November 1, 2010, Plaintiffs filed a Complaint in the Lancaster County Court of Common Pleas. (Compl., Not. of Removal Ex. A, ECF No. 1.) The Complaint named as Defendants PNC, the Borough of Ephrata, and Ephrata Police Officers, John Doe Numbers 1, 2 and 3. (*Id.*) The Complaint asserts the following claims: replevin against PNC (Count I); a request for a preliminary injunction against PNC (Count II); conversion against PNC (Count III); trespass against PNC (Count IV); breach of peace against PNC (Count V); two civil rights claims under 42 U.S.C. § 1983 against the individual John Doe Police Officers (Counts VI and VII); and a civil rights claim under 42 U.S.C. § 1983 against the Borough of Ephrata (Count VIII). (*Id.*)

On the day that they filed their Complaint, Plaintiffs also filed an Emergency Motion for Preliminary Injunction which sought to enjoin PNC from selling the Boat. (PNC Mot. Relief Prelim. Inj. Ex. B, ECF No. 20.) On November 1, 2010, the Honorable Margaret C. Miller issued a Preliminary Injunction, which stated that PNC "shall not sell, lease, rent, or otherwise dispose of the boat until final resolution of the underlying case." (*Id.*) The Borough of Ephrata filed a Notice of Removal to this Court on December 20, 2010. (Not. of Removal.) On December 30, 2010, PNC filed a Third Party Complaint against National Liquidators, asserting a breach of contract claim. (ECF No. 5.)

On December 27, 2010, the Borough of Ephrata filed a Motion to Dismiss (Borough Mot., ECF No. 4) and accompanying Memorandum of Law (Borough Mem., ECF No. 4). On January 21, 2011, Plaintiffs filed a Brief in Opposition to the Borough of Ephrata's Motion to Dismiss.

(Pl.s' Opp. to Borough Mot., ECF No. 9.) On February 9, 2011, the Borough of Ephrata filed a Reply to Plaintiff's Opposition. (Borough Reply, ECF No. 16.)

On January 6, 2012, Plaintiffs filed an Amended Complaint. (Am. Compl.) The Amended Complaint names as Defendants the individual Police Officers, Bright, O'Hanlon and Martin. (*Id.*) Plaintiffs advise that all Defendants agreed to the filing of the Amended Complaint. (Am. Compl. n.1.)[1] Also on January 6, 2012, Defendants Police Officers Bright, O'Hanlon and Martin filed their Motion to Dismiss the Amended Complaint (Officers' Mot., ECF No. 32), along with an accompanying Memorandum of Law (Officers' Mem., ECF No. 32). On February 17, 2012, Plaintiffs filed their Brief in Opposition to the Police Officers' Motion to Dismiss (Pls.' Opp. to Officers' Mot., ECF No. 36.)[2]

### III. LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show

---

[1] Prior to the filing of the Amended Complaint, Plaintiffs filed a Motion for a Default Judgment against the individual Police Officers. (ECF No. 19.) That Motion will be denied as moot.

[2] PNC has filed a Motion for Relief from the Preliminary Injunction Order (ECF No. 20) and a Motion for Partial Summary Judgment (ECF No. 26). We will deal with these Motions separately.

entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Pursuant to Rule 12(b)(6), all factual allegations, and reasonable inferences to be drawn therefrom, are viewed in the light most favorable to Plaintiffs, the nonmoving party. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009); *Phillips*, 515 F.3d at 233; *see also Iqbal*, 129 S. Ct. at 1949 ("When assessing whether the complaint satisfies [the 12(b)(6)] standard, courts must treat a complaint's allegations as true.").

**IV.    DISCUSSION**

    **A.    Police Officers Bright, O'Hanlon and Martin's Motion to Dismiss**

Counts VI and VII of the Amended Complaint assert claims against the individual Police Officers pursuant to 42 U.S.C. § 1983. Count VI alleges an illegal seizure of Reinhart III by the Police Officers "ordering him to remove himself from an area where he had a lawful and legal right to be (his own business)." (Am. Compl. ¶ 57.) Count VII alleges that the Police Officers violated Reinhart and Sunset's constitutional rights to due process and equal protection by "aiding PNC (through its agent) in taking possession (a civil matter) by way of breaking and entering and breaching the peace." (*Id.* at ¶ 65.)

Section 1983 offers private citizens a means to redress violations of federal law by state officials. *See* 42 U.S.C. § 1983.[3] The statute is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To prevail on a § 1983 claim, Plaintiffs must show "first, that [they were] deprived of a constitutional right, and second, that the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (internal quotation marks omitted).

    1.   *Illegal Seizure (Count VI)*

The Fourth Amendment protects a person's right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure only occurs when a police officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). "A person is 'seized' under the Fourth Amendment if he or she does not feel free to leave." *Gale v. Shorti*, 608 F. Supp. 2d 629, 633 (E.D. Pa. 2009) (citing *Shuman ex rel. Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 147 (3d Cir. 2005)).

---

[3] Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Here, Plaintiffs do not allege that Reinhart III felt that he was not free to leave the premises. Rather, Plaintiffs allege that the Police Officers ordered Reinhart III to move away from the access point behind which the Boat was located. Plaintiffs further allege that based on the Police Officers' order, Reinhart III felt compelled to comply. The facts, when viewed in a light most favorable to Plaintiffs, do not show that Reinhart III was deprived of a constitutional right. *See Gale*, 608 F. Supp. 2d at 633 (finding no Fourth Amendment seizure where the plaintiff alleged that he was forced to leave the premises when he did not want to). Reinhart III was free to leave at any time. Plaintiffs fail to state a § 1983 claim of illegal seizure under the Fourth Amendment. Accordingly, Count VI will be dismissed.[4]

      2.   *Due Process and Equal Protection (Count VII)*[5]

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In the context of private repossessions accomplished with the aid of police officers, the analysis of whether a § 1983 claim is sufficiently alleged often turns on whether the police officer acted "under the color of state law." *Harvey*, 635 F.3d at 609 & n.2 (noting that "state action" and

---

[4] Plaintiffs suggest in their Opposition to the Police Officers' Motion to Dismiss that the actions of the Police Officers amount to a Fourth Amendment seizure of personal property. (Pls.' Opp. to Officers' Mot. 8.) This argument fails for two reasons. First, the Amended Complaint does not assert a claim for a Fourth Amendment seizure of personal property. Rather, Count VI clearly alleges a claim under § 1983 for illegal seizure of the person of Reinhart III. (*See* Am. Compl. ¶ 60 ("the removal of [Reinhart III] by order of the Defendant Officers amounts to an illegal seizure of his person . . . .").) Second, Reinhart III does not have a property interest in the Boat and therefore cannot assert a claim for illegal seizure of property. The Boat is owned by Reinhart and Sunset.

[5] Plaintiffs agree to the dismissal of Count VII as it relates to a claim under the Equal Protection Clause of the Fourteenth Amendment. (*See* Pls.' Opp. to Officers' Mot. 11.) Accordingly, we only address the Fourteenth Amendment due process claim in Count VII.

"acting under the color of state law" are used interchangeably); *see also Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) ("State action is a threshold issue in a Fourteenth Amendment claim.").

In determining whether a police officer "acts under color of state law," the "test is whether the officer maintains neutrality or takes an active role in the repossession resulting in an unconstitutional deprivation." *Harvey*, 635 F.3d at 609-10 (citing *Abbott*, 164 F.3d at 146). "The mere presence of police at the scene of a private repossession does not, alone, constitute state action causing deprivation of a protected property interest." *Abbott*, 164 F.3d at 147 (holding that police officers who arrived at the scene of the repossession merely to check documentation did not rise to the level of state action to deprive plaintiff of his constitutional rights). A police officer may be called to assist in maintaining the peace; however, the officer must remain neutral. *Harvey*, 635 F.3d at 610. "An officer abandons this neutrality once he takes an active role and assists in the repossession." *Id.* Assistance can take the form of "facilitation, encouragement, direction, compulsion, or other affirmative assistance." *Id.* However, liability will only attach when an officer plays a "principal role" in the seizure. *Id.* (citing *Abbott*, 164 F.3d at 147). The Third Circuit has cautioned that "there is no precise formula, and [that] the distinction [between neutrality and taking an active role] lies in the particular facts and circumstances of the case." *Id.*[6]

---

[6] In *Harvey*, the Third Circuit listed circumstances in which a police officer may be found to have affirmatively assisted in the repossession. Such circumstances include where the police officer "(1) accompanied the private party onto the scene, (2) told the debtor that the seizure was legal, (3) ordered the debtor to stop interfering or he would go to jail, (4) intervened at more than one step in the repossession process, (5) failed to depart before the repossession has been completed, (6) stood in close proximity to the debtor, or (7) unreasonably recognized the documentation of one party over the other." *Harvey*, 635 F.3d at 610.

Plaintiffs allege that Police Officers Bright, O'Hanlon and Martin arrived at the scene of the repossession armed, in police uniform and in a police vehicle with activated emergency lights. Plaintiffs further allege that the Police Officers ordered Reinhart III to move away from the access point.  Plaintiffs do not specify which of the Police Officers ordered Reinhart III to move.  It is further alleged that Officer Bright pushed the first door out of Reinhart III's hands and began punching keypads that activate the entrance doors to access the Boat, eventually finding the button to open the back door.  This allowed National Liquidators to gain access to, and repossess, the Boat.  Plaintiffs allege that while this was going on, one of the Police Officers said to Reinhart III, "I hope I don't get in trouble."  (Am. Compl. ¶ 27.)

Viewing the facts in a light most favorable to Plaintiffs, we are satisfied that a § 1983 claim has been properly alleged.  Officer Bright unquestionably took an active role in the repossession by moving Reinhart III's hands away from the door, and pushing buttons on a keypad in order to gain access to the Boat.  Officer Bright's facilitation of the repossession demonstrates a lack of neutrality.  Although it is not entirely clear exactly what roles Officers O'Hanlon and Martin played in the repossession, Plaintiffs have alleged sufficient facts showing that all three Police Officers were actively involved in the repossession.  Defendants argue that the claim should be dismissed against Officers O'Hanlon and Martin since Plaintiff does not specifically state which Police Officer ordered Reinhart III to move away from the access point, or which Police Officer stated "I hope I don't get in trouble."  We disagree.  Plaintiffs' allegations provide enough facts "to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Phillips*, 515 F.3d at 234 (internal quotation marks omitted).  If, after discovery, it is clear that Officers O'Hanlon and Martin did not actively participate in this

9

repossession, then Defendants may move for summary judgment.

Defendants also argue that because the owners of the Boat—Reinhart and Sunset—were not present during the repossession, a Fourteenth Amendment due process violation cannot be maintained. This argument was flatly rejected by the Third Circuit in the *Harvey* case. *See Harvey*, 635 F.3d at 611 (rejecting police officer's argument that the plaintiff's presence at the scene of the repossession was "crucial" to a finding of state action for purposes of a § 1983 claim).

We are satisfied that Plaintiffs have sufficiently stated a claim under § 1983 against the Police Officers for violation of their Fourteenth Amendment rights.

### B. The Borough of Ephrata's Motion to Dismiss

Count VIII of the Amended Complaint asserts a § 1983 municipal liability claim against the Borough of Ephrata. Plaintiffs allege that the Borough of Ephrata did not properly train its police officers "in the use of appropriate force," or "in when they can or cannot aid in civil repossession." (Am. Compl. ¶¶ 70-71.)

Since municipalities are not subject to respondeat superior liability, they can only be liable under § 1983 "when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (internal citations omitted).[7] The Supreme Court recently affirmed that a failure to train employees may constitute a

---

[7] "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (internal quotation marks and citations omitted). "Customs are practices of state officials . . . so permanent and well settled as to virtually constitute law." *Id.* (internal quotation marks and citations omitted).

"policy or custom" for purposes of § 1983 but only when it amounts to a "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The Court explained that a municipality's liability under § 1983 is at its most tenuous where a claim turns on a failure to train." *Id.* at 1360. "The first question in any case alleging municipal policy for a failure to train is 'whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Brown v. Pa. Dep't of Health Emer. Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) (quoting *Canton*, 489 U.S. at 380).

Deliberate indifference in the context of failure to train claims is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* In other words, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' rights, the city may be deemed deliberately indifferent if the policymakers choose to retain the program." *Id.*; *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) ("[Municipal decisionmakers'] continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."). Deliberate indifference is ordinarily demonstrated by a showing of a "pattern of similar constitutional violations by untrained employees." *Connick*, 131 S. Ct. at 1360. The Supreme Court further explained that "in a narrow range of circumstances," a plaintiff may prevail with proof of only a single incident; however, the "unconstitutional consequences of failing to train

[must] be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 1361.

Here, Plaintiffs have provided no basis for their conclusory allegation that the Borough of Ephrata failed to adequately train its police officers. More importantly, Plaintiffs have provided absolutely no facts supporting a finding that the Borough of Ephrata's training, or lack thereof, of its police officers amounted to a deliberate indifference to Plaintiffs' constitutional rights. There are no allegations contained in the Amended Complaint that suggest a "pattern of similar constitutional violations by untrained employees." *Id.* at 1360. Nor have Plaintiffs supplied any facts that would place their municipal liability claim within the "narrow range of circumstances" where proof of a pattern of similar constitutional violations is not necessary. Accordingly, Plaintiffs' § 1983 claim against the Borough of Ephrata will be dismissed. However, we will permit Plaintiffs to amend their Complaint to more specifically allege their municipal liability claim against the Borough of Ephrata.

## V.   CONCLUSION

For the foregoing reasons, Defendant Borough of Ephrata's Motion to Dismiss Plaintiffs' Complaint will be granted, and Defendants Police Officers Bright, O'Hanlon and Martin's Motion to Dismiss the Complaint will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**